All right, so it's my understanding, all right, so we have one person in person and then we have one person by video, albeit two people at council table, it's my understanding that just one person will be arguing. Am I correct? All right. And so each side has 15 minutes, so we're ready. Good morning, Your Honors. Deepak Gupta for the Plaintiff's Appellants. I will try to reserve three minutes for rebuttal. Okay, thank you. There's no avoiding the fact that this was a retroactive application of law. The district court's decision extinguished the plaintiff's claims for wages, claims that arose from work that they performed as truck drivers in the years before the FMCSA issued its preemption determination. So the key question here is whether Congress authorized that retroactive preemption, and whether it did so expressly and unambiguously with the sort of clarity that the Supreme Court has demanded in cases like Landgraf and Martin v. Haydix. So, Mr. Gupta, let me just, sort of framing this, let me ask you a question. My understanding is if we were to conclude, and I'm saying this hypothetically, I know you're not going to agree because, and I don't know that we haven't conferenced on this case, so I can't say where we're going to end up. But let's say hypothetically we feel the language is unambiguous, then we don't need to, that it's retroactive, we don't need to go further. But if it's ambiguous, then there's the Landgraf analysis that needs to be done. The district court didn't do the Landgraf analysis in any detail. That's right. Can we do it in the first instance here if we, it seems to me it's illegal. Yes. Can we, and I don't know that there's any facts that need to be developed. Can we do it here? I think you can do it here. I think both parties have joined the issue on this purely legal question, and we haven't identified any factual disputes that would bear on the Landgraf analysis. So, and the Landgraf analysis really is just an inquiry into whether Congress has spoken unambiguously and whether the application of the law is retroactive. The statute here says that the states, quote, may not enforce laws that are preempted, but it doesn't say anything about whether that rule extends to claims arising from conduct before the preemption determination. Every case about retroactivity is in some sense a case about whether a court should enforce a new law or rule with respect to pre-enactment conduct. The word enforce in a statute standing alone provides no temporal direction either way, and the Supreme Court has been clear. General, even universal language in a statute isn't enough to override the bedrock presumption against retroactivity. So does our decision in Southwest Center for Biological Diversity control here? I'm thinking of the passage that says that the expectation of success in litigation is not the kind of settled expectation protected by Landgraf's principles. I think that the Southwest biological diversity case is really directed to the peculiarities of FOIA litigation. That was a case in which the plaintiffs were seeking records under the Freedom of Information Act, and Congress passed a statute that said that those records were unavailable. And in a freedom of information case, and I think that makes it unusual and different from virtually any other kind of litigation, the plaintiff doesn't have to do anything. The plaintiff simply makes a request for information and sues. And so what the Ninth Circuit said in that case is Landgraf doesn't apply here because the whole point of the rule against retroactivity is that it is protecting expectations arising from conduct that preceded the enactment. Here, by contrast, you have plaintiffs who were workers, they had an employment contract with their employer, they performed work, and they expected to be paid according to California law. And so this is a much more conventional case where there is reliance. And I think for that reason, the Southwest biological diversity case does not control. Instead, I think the controlling case here is the Supreme Court's decision in Martin versus Haydix. And I think there the Supreme Court rejected an argument that is just like the one Swift made here. That statute, which was the Prison Litigation Reform Act, said that, quote, in any action brought by a prisoner, fees shall not be awarded except in accordance with the statute's cap. And so the plaintiffs there focused on these words, especially the word any and the word awarded, and said that basically this was an instruction to the court that a court lacked present authority to award attorneys fees under the PLRA. And the Supreme Court said that wasn't enough. That kind of language, and I think their case was better than the one here, that kind of general language, even if it's universal, and it seems to apply to all cases, is not sufficient unless Congress has spoken directly to the temporal reach of the statute. Well, they do say, but they do say may no longer be enforced. Well, so that is the language that the agency used, right? So I think under this court's precedence, under Elim versus Church of God, you have to ask both whether Congress spoke with sufficient clarity and whether the agency spoke with sufficient clarity. And I think the problem here, the chief problem for the other side, is that Congress did nothing to speak about the temporal reach. If anything, the title to the statute says preemption after decision, so it suggests the opposite. And in Cipollone versus Liggett, which is a seminal preemption case from the US Supreme Court, the court dealt with this question. There was a statute passed in the late 1960s that preempted state failure to warn claims to the extent that cigarette manufacturers had the Surgeon General's warnings on their cigarette packets. And what the Supreme Court said there, and the statute, I'll just read you the language, because I think the language is key to all of these cases. The statute said no requirement or prohibition shall be imposed under state law. That is pretty much what you have here. You could change the word imposed to enforce, it's the same thing. And there, the court said that the preemption kicked in at the time that the preemption enactment was enacteded. And so for failure to warn claims that involved warnings before 1969, there was no preemption. So preemption isn't any different from any other question. There are substantive rights that people have under state law that engenders reliance interests. And the question is, has Congress spoken directly to the question of retroactivity? And we have, we have searched far and wide and found virtually no examples of retroactive preemption. The norm is that preemption is prospective. In fact, we found only one case that's cited in our 28-J letter, where the Commodities Futures Trading Commission was given the authority to preempt state law retroactively. And there, Congress actually used the words retroactively or prospectively. That's the only example we've been able to find, haven't found any examples on the other side's briefing of any case in which preemption was expressly retroactive or where an appellate court has found that preemption applied retroactively. So your facts here are that at the time that you're claiming here, that the, I get this FMCSA didn't exist at the time that you're claiming. So you concede that once that came out, you have no claims after that date, right? Right. And when you filed the lawsuit, the FMCSA also had not passed, right? It was not before, it was, did not exist. That's right. The preemption determination came out after the lawsuit was filed and after all of the events in question in this lawsuit. And in fact, it's not simply that the preemption determination came out afterwards. It's that beforehand, the agency's position was emphatically that there was no preemption. And in fact, in a case called Diltz, the agency came to this court and said there was no preemption and they didn't have any authority to preempt. And so the plaintiffs were not, they were entitled to rely on the federal government statement that there was no preemption. Well, there had been an attempt previously to pass something like this and it failed, wasn't it? 2008 and then they're successful in 2018. So I guess what I'm going to ask, if that's the case, why should your clients be that surprised about this? The issue has always been out there. Well, in 2008, the agency said we have no authority to preempt. And in Diltz versus Penske, there was also an attempt to preempt by a different avenue, these same kinds of claims. And the federal government came before this court and said there's no preemption, there's no conflict preemption. This court held there was no preemption. So the reliance interests were- But the Motor Carrier Safety Act, it has long said that a state may not enforce state law, that the Secretary of Transportation decides under this section may not be enforced. So why hasn't it, to Judge Callahan's question, why hasn't it always been a possibility that that state law might be preempted? Why aren't your clients on notice? So first of all, these are wage and hour laws, they're general laws. And the agency's position was we have no authority to even consider preemption in that scenario. And secondly, this is very different from the scenario in which a federal agency interprets an express preemption clause. That's the more typical scenario, like in the food and drug context or some other scenario. And the California Court of Appeals in Garcia, I think, recognized that. They held there was no retroactive preemption as a result of this FMCSA determination. And what the court said there is this is unlike a typical preemption provision in which the agency is simply interpreting preemption that's already been enacted by Congress. Instead, there's a delegation of a kind of quasi-legislative determination that the agency makes for policy reasons. But so just so that I understand this, it's not like the issue where I think there's a court of appeal that favors your position, in a California Court of Appeal case. But this isn't really an issue of state law, so it doesn't really matter. Whatever we say is going to be what matters, right? Like in some instances, like when we sit in diversity, we have to look to state law and we certify issues. But this does not fall here. You are not bound by Garcia, but I do suggest that it is persuasive because it's the only appellate decision on this question. And I think it's the only decision other than one district court decision, the North decision, that really carefully analyzes the important to recognize that the California courts would be free to differ. And so then, if the court were to differ with Garcia, you'd have a situation in which the litigation in state court would take a different course. But certainly, this court is free to decide the question for itself. I think it should do so on the basis of well-settled retroactivity precedents, and particularly Martin v. Haydix. Because I don't think the other side really has an answer to any preemption. Any retroactivity question could be reframed as a statement about the present authority of the court. That's what Martin v. Haydix recognizes. And what the Supreme Court held is that's not enough. There has to be specific indication from Congress that's unambiguous, that Congress intended to do the unusual thing, which is to have the effect of its law sweep retroactively. If there are no further questions, I'll reserve for rebuttal. There don't appear to be, so we'll let you reserve your balance. Thank you, Mr. Gupta. Good morning. Good morning, Your Honors. Paul Cowie for Defendant Appellee, Swift Transportation. May it please the Court. The California meal and rest break rules, quote, may not be enforced. That is what the 1984 Motor Carrier Safety Act provides through 49 U.S.C. Section 31141. Section 31141 unambiguously deprives courts of the authority to enforce state laws that the FMCSA has already preempted. How do you reconcile your position with Martin v. Haydix? Martin v. Haydix involved a situation where they simply changed the fee rates for work that had previously been done. So there was a new statute saying that the rates at which certain prisoner work would be done was going to be set at a certain amount. It was not a preemption determination. There was no language such as may not enforce. And it was a new statute, which is different than the present circumstance where we're referring back to a 1984 statute that has been enforced for nearly four decades. Well, here, though, they did, the class did have the rights at the, they did have these meal and rest break rights at the time that's in question. And so aren't they damaged by the fact that we go back and say, well, no, you didn't have them? Your Honor, I think there's two different parts to your question. In terms of damage, there was no reliance interest here. The drivers didn't have to do anything. The meal and rest break rules are enforced on employers. There's no imposition of new legal consequences for past conduct, such as in Martin, where attorneys had already done the work at rates that they'd already agreed to be paid for that work. And so that part is different. Next, we're dealing with preemption. Preemption, once a law, a state law is preempted, it is void. It is without effect. But Landgraf tells us that retroactivity is not favored in the law. And just because an agency can make a rule and Congress permits them to do so, isn't it a different thing to then permit that agency to apply those new rules retroactively? And I think that's what we're struggling here with. And there should be express authority given by Congress. And here, where is that express authority? The express authority comes from the 1984 Act, which says that any rules that are preempted may not be enforced. We are dealing with language that says may not enforce a state law. Once preempted, that law is without effect. It is void. As we all know, once something's void, it's as if it has never occurred. So therefore, it's a different situation than a Landgraf analysis. Is that language affected in any way by the administrator's statement, California may no longer enforce the MRB rules? Your Honor, our position is no. It's identical language, may not enforce, may no longer enforce. But in the event you disagreed with me, if may no longer enforce is ambiguous, then the FMCSA's opinion letter, which describes how it is to be interpreted, how the preemption determination is to be interpreted, would be given our deference and it would be controlling. Because if the may no longer enforce language is ambiguous, then the opinion letter can tell you what that means, and that's exactly what the FMCSA did. What weight do we give the opinion letter? I read the opinion letter, and the analysis seems a bit circular in that letter. So how do we weigh that opinion letter? Your Honor, our position is that the language may not enforce from the 1984 legislation, and from the preemption determination may no longer enforce, is clear and unambiguous that you cannot, a court cannot enforce California meal and rest break rules. If you were to disagree and say that may no longer enforce is ambiguous, then the opinion letter would be subject to our deference and would be controlling on this court. Well, say if we say it's ambiguous, and I asked your friend on the other side the question, and we feel we have to go into the lands graph analysis. The district court really didn't do that. Can we do it here in the first instance, or do we have to remand it to the district court? I think my friend was correct that you are able to do that, as this is a matter of law. So what about hypothetically, if the state law set the minimum wage at $20 per hour, and the FMCSA preempted that law by ruling that the minimum wage for interstate carriers was $15 an hour. Would that order bar employees from suing for being paid less than $20 per hour to the FMCSA's order? It's a hypothetical. I understand, and the difficulty answering the hypothetical is that when you are looking at a preemption decision, you are looking at conflicting laws. You're looking at a federal law, and you're looking at a state law. And so in the description you just gave, what is the federal law that the FMCSA has put in place under 31136? Here we have the hours of service regulations that have been in force and in place for decades, controlling commercial motor vehicle safety. Once it is established that California meal and rest break rules are also on motor vehicle safety, then you have got a conflict of rules. And the reason the preemption determination was made, it was found that those California rules were incompatible with the hours of service regulations, and also placed an undue burden on interstate commerce. It would be perverse to find that rules that are incompatible with federal regulations that are already in place should then be enforced for any period of time. And in fact, that brings us back to what the language says. They may not be enforced once preempted. I'm struggling again with the sort of clear statutory authority here, and I'll give you a couple of examples. So for example, in the Federal Railway Safety Act, it limits preemption provisions to pending state laws, causes of action arising on or after January 18, 2002. There's another law, the Lawful Commerce in Arms Act, that limits preemption to actions pending on October 26, 2005. Here we don't have that sort of bright line statement of when we should give a fact. So I'm trying to figure out where that clear statutory authority that you can apply this says that it may not be enforced. We're looking at not applying something retroactively, but we're applying a statute that's been enforced for four decades, so there's no retroactivity to apply to the words may not enforce. Next, if you disagreed with that, and to more specifically answer your question, in terms of the language may not enforce, here you're looking at the decision here does not say may no longer impose the California meal and rest break rules. It says you may no longer enforce them. If a court is without power to enforce a law, then the retroactivity event is something occurring in the future at the time when a court was ruling on a summary judgment or at a trial. And so again, I think you can either way around, you still end up with the same result. Either there is no retroactivity because the statute's been in place for four decades, or the retroactivity event, just like in Altman, is the future enforcement of those rules. Indeed, Your Honor, it would be perverse for the FMCSA to have found that these California meal and rest break rules are preempted because they're incompatible with the service regulations which these drivers must comply with, and which SWIFT must comply with, and that they place an unreasonable burden on interstate commerce, yet to be able to enforce them at some future time that has not yet occurred, that would be a perverse outcome to say, yes, it's incompatible with these other rules, but you have to have complied with both of them anyway. Are you saying it would be perverse, or are you arguing that it would be an absurd interpretation? Is that, I'm just trying to, I'm looking at canons of statutory construction here. Your Honor, that's probably a more accurate way to put it. Well, I'm just trying to think this through. And in terms of an absurd interpretation, let's take this one step further. The way in which the Motor Carrier Safety Act of 1984 sets up preemption is that you first have to compare the state law to the federal law. Well, until the state law exists, that can't happen. So in this case, a lawsuit was filed in October of 2018. Only two months later, the preemption determination was made. There is always going to be a moment in time between when a state institutes a law and when a preemption determination could possibly be made. Now, in this case, we can go back and say, should it have happened in 2008 or 2014, et cetera. But if you were to find that the may no longer enforce language, A, had retroactive effect, and B, it's not allowed to do that, then you would be allowing states to always set up new laws. There would always be time before somebody can petition the FMCSA. There'd always be time before that decision is made. And then even for preempted statutes, which are without effect and are void, you'd be creating liability in all of these states whenever they introduced a new law. And there'd be nothing an employer could do about it, because there's always going to be this lag. Well, if we look at, there's no circuit case on this, right? Certainly not in the Ninth Circuit. There's no anywhere, right? We don't have anything. So we're going, if we go there, we go where no one's gone. I'm just wondering if you look at the recent Supreme Court term, and even look at like the Dobbs case, which has certainly invited a lot of comments, the Supreme Court seems to be talking about federalism there and allowing states to make these kind of decisions themselves. Is that, I haven't made a decision on that, but is that something that we should, you know, I always like, I don't really like to decide a case in a Supreme Court, but on the other hand, I mean, there's no precedent. So it would not be whatever we decide. I don't think we're humiliated by it, but I'm just, but I try to read the tea leaves and say, what is the court thinking? And they have made some statements about federalism that give me pause. Your Honor, I think looking at the Federal Arbitration Act and the many, decisions coming out of the U.S. Supreme Court saying that, you know, the FAA preempts these various different state law efforts. And if it means what we say it means, then stop trying to find exceptions. I think Scalia said it best. We said what we meant, we meant what we said, and I think that applies directly to this case. It may not enforce. You don't need to say it may not enforce after a certain date. If I tell you, you cannot enforce this anymore, then how do you court decisions? They've not got into the land graph analysis because you don't get into the land graph analysis when it's so clear and it's so clear and it's so obvious. Your Honor, I know that I've got just about a minute left. At one point, I want to make sure that's clear, which I've referred to and it's in our papers. It's certainly in the ATA's amicus brief, which is the determination is an order. Appellants agree with that, that it's an order. It's the first line of page 10 of their reply brief. And what's different here is that usually it would be a court who is issuing an order. If the court was issuing an order on the 1984 statute, we wouldn't be talking about retroactivity because the statute is four decades old. And that's why I think my friend has not been able to find any preemption determinations that are quote retroactive because that's not how preemption works. And usually it's the courts who are issuing preemption determinations. In fact, in DILT, it was the F-A, I won't give you the full title, which they were trying to use as a defense to meal and rest break rules. If the court had held that yes, the F-A preempted meal and rest breaks, it wouldn't have been on a go forward basis. It would have related back to the statute of 1994. The sort of oddity of this to make a decision that you would usually see the court making. Having issued that order, it is not a new rule. It is not new legislation. It's application of existing law to the facts. All right. Thank you. Any additional questions? Thank you. All right, Mr. Kupta, you have a little time for rebuttal. I'll make just a few quick points of rebuttal, Your Honors. Judge Thomas, you asked my friend to distinguish the Martin v. Haydick's case. I think he said two things. I think he said first, that was a new statute and this is a new administrative determination. And the second thing he said, which I thought was interesting, is that that case involved attorneys who had performed to work and the statute changed the rates. That's actually quite analogous to this case. This is a case about truck drivers who performed to work under the California wage and hour rules. And it would be no different a scenario if, as you suggested, Judge Callahan, in your hypothetical, if the change in law were a change in rates. As for the distinction between a new statute and a new administrative decision, this court's clear that the retroactivity principles are the same when the agency announces a new rule. The precedent on point is Elim Church of God. It's a case of this court from 2013. And what it says is that when you have an administrative decision, the inquiry is twofold. Whether Congress has expressly conferred power on the agency to promulgate rules with retroactive effect, and if so, whether the agency clearly intended for the rule to have a retroactive effect. We've already discussed at length whether Congress expressly conferred that authority. And I think the problem for the other side is that this language may not enforce, it's just too thin a reed to rest on. If that were sufficient, it would be easy to reframe any of the cases. You could take the facts of Landgraf, you could take the facts of Martin versus Haydix, and you could easily reframe the statutes in those cases in terms of a command to enforce or not enforce. That is simply not enough. And when it comes to the clarity with which the agency spoke here, I think it's worth remembering that the agency's lawyers themselves were not sure initially whether this would have purported retroactive effect. It in fact told the public, the regulated entities, that there would be no retroactive effect. So if the agency's lawyers are unclear on that, it's hard to say that there's unambiguous retroactive effect. And finally, Judge Matua, you asked about the role of deference and ambiguity, and I think Judge Callahan, you asked also, what do you do if there's ambiguity? And I just wanted to point you, because you might miss it, to footnote 44 in the Supreme, 45 in the Supreme Court's decision in INS versus St. Cyr, and what that tells you is ambiguity is what you're looking for when you do the Landgraf analysis. Once you've found that there's ambiguity, there is no role, there's no retroactivity, and hence no role for agency deference. And so in retroactivity questions like this, you cannot fill the gaps through deference. Thank you. All right, I want to thank both of you for your very helpful argument in this case. I think you both were very facile and prepared, and we're able to answer our questions. And I can state that I personally appreciate when people don't engage in hyperbole, and they deal with what we have in front of us, and go back and forth as both of you did. And so thank you both for your argument in this case, and this matter will stand submitted.
judges: CALLAHAN, THOMAS, Humetewa